**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**CEDRIC GILLETTE,**
     **Plaintiff,**

**v.**                                                **No: 5:07cv10/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
     **Defendant.**

_____

**REPORT AND RECOMMENDATION**

     **This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Gillette's application for disability insurance benefits under Title II of the Act.**

     **Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

## PROCEDURAL HISTORY

In March, 2004 plaintiff filed an application for disability insurance benefits, claiming an onset of disability of November 11, 1997. His application was denied initially and on reconsideration. He requested a hearing before an Administrative Law Judge (ALJ) and a hearing was held on December 6, 2005 at which plaintiff was represented by counsel and testified. At the hearing the plaintiff amended his claimed disability onset date to October 13, 2004. The ALJ rendered an unfavorable decision on September 16, 2006 (tr. 11-20) and the Appeals Council declined review (tr. 4-6), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that the plaintiff met the insured status requirements of the Act during the relevant period; that he had severe impairments of degenerative disc disease with disc protrusion at L5-S1, dysthymia/adjustment disorder, and degenerative changes in the cervical spine, but that he did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that he had the residual functional capacity to perform light unskilled work; that he was unable to perform his prior relevant work as a grocery store manager, insurance salesperson, floor salesman, car salesman or food sales merchandiser; that he was 50 years old with a high school education; that considering his age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform; and that the plaintiff was not disabled as defined in the Act.

*Case No: 5:07cv10/RS/MD*

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra.* The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1.      Is the individual currently engaged in substantial gainful activity?

2.      **Does the individual have any severe impairment?**

3.      **Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?**

4.      **Does the individual have any impairments which prevent past relevant work?**

5.      **Do the individual's impairments prevent any other work?**

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Plaintiff was in a motor vehicle accident on November 22, 1997.  He saw his family practitioner that day, complaining of pain in his back and left knee, and some slight neck pain.  He was off work for about six weeks and returned to work.  He worked for six weeks and was asked not return because he was having difficulty doing his job, which required a lot of driving.  An MRI scan of the cervical spine showed disc protrusion at L5-S1 with some impingement on the left S1 nerve root (tr. 204).  His family physician referred him to a neurosurgeon, Merle Stringer, M.D., who saw him on May 22, 1998.  On physical examination Dr. Stringer found tenderness in the mid and lower lumbar area and over both sacroiliac joints, limitation of forward bending to 50% of normal, and positive straight leg raising on

the left.   There was no weakness on motor examination and no abnormality on sensory examination.   Reflexes were equal and symmetrical.   Dr. Stringer's impression was back and left leg pain, disc protrusion with some impingement on MRI scan.  Dr. Stringer felt that surgery was not appropriate and recommended that plaintiff try to resume his normal activities and then try to return to work (tr. 203-204).

From February 1999 through April 2000 plaintiff saw Dr. Stringer on a regular basis (tr. 179-202).   His condition did not change significantly.   He was given injections on an as-needed basis.   On March 24, 1999 Dr. Stringer indicated that plaintiff was capable of light work, and noted that plaintiff was working at the time (tr. 194).   By March 8, 2000 Dr. Stringer indicated that plaintiff was doing well, was working, and recommended that his care be transferred to his family doctor (tr. 180). Plaintiff last saw Dr. Stringer on April 28, 2000.   At that time it was recommended that plaintiff continue to work (tr. 179).

The medical record is silent for the next three and a half years.   Then, on December 11, 2003, plaintiff appeared at the local community clinic complaining of back and neck pain, although mostly he was concerned about developing diabetes because of a family history of that disease.   He stated that he was divorced and lonely, had suicidal ideation and felt a bit depressed at times.   Julian Giraldo, M.D., gave an assessment of mild depression and paranoid schizophrenia, scheduled him for a physical examination and referred him to Life Management (tr. 255-257).

On January 8, 2004 plaintiff went to the emergency room complaining of leg and neck pain. His physical examination was essentially normal. He was prescribed Quinine Sulfate for leg cramps and discharged home (tr. 220-222).  On July 28, 2004 plaintiff appeared at the local clinic complaining of blackout spells, weakness and arthritic pain.  He indicated that he had had a blackout spell in December 2003 after he drank beer but that there had been no blackouts since that time.  He complained

of difficulty in walking, with pain in his lower back.  Plaintiff was advised to stop drinking alcohol, was prescribed a cane to assist in walking, and prescribed Celebrex for his pain (Tr. 254).  Plaintiff was seen again in the clinic on February 10, 2005 and June 2, 2005, both times complaining of right leg pain as well as chest pain on and off over the previous three weeks.  The examining physician noted a history of chronic back pain.  He scheduled plaintiff for an EKG which was read as normal (Tr. 291-292).

On December 2, 2005, Kongsak Chantomsaeng, M.D., medical director at the community clinic, wrote a letter addressed To Whom It May Concern.  He indicated that he had been examining the plaintiff for the previous year on a number of occasions.  He stated that plaintiff's mental depression continued and that necessary medicines to help with depression had been prescribed. He further stated that plaintiff had a degenerative back.  He felt that plaintiff should limit his lifting to only 10 pounds but then stated that there should be no lifting, pulling or pushing and that plaintiff must limit his sitting, alternating every 30 minutes or less as needed. There should be no overhead reaching or long periods of standing, twisting or bending (tr. 285).  Dr. Chantomsaeng also filled out a Medical Source Statement of Ability to do Work-Related Activities, in which he indicated that plaintiff could lift or carry less than 10 pounds, could stand or walk less than two hours in an eight hour day, must be able to alternate between sitting and standing, that he had limited use of his upper and lower extremities and that he should never climb, balance, kneel, crouch, crawl or stoop.   Finally,  he noted  that  plaintiff had  mental  health impairments that could be expected to interfere significantly with activities of daily living, social functioning, persistence or pace, all related to his depression (tr. 286-289).

On May 20, 2004, shortly after he filed his application, plaintiff was examined by Lawrence N. Annis, Ph.D., a clinical psychologist, at the request of the state

agency.  Plaintiff indicated that he was depressed, lonely, worried about his bills and that his neck and back bothered him.  He had difficulty sleeping and had what he described as anxiety attacks.  Dr. Annis felt that plaintiff's thought expression was rational and coherent but often emotional, there were no loosened associations or delusional thinking, concentration was good, and there was no decline in attention. There were no apparent signs of hallucinations. Dr. Annis' diagnosis was dysthemic disorder with early onset and pain disorder associated with a general medical condition, chronic.  His prognosis was that at least some degree of depression was likely to continue for the foreseeable future although outpatient treatment and prescribed psychotropic medications might make plaintiff feel better about himself and more in control of his life.  Dr. Annis also felt that depression and anxiety were present to a degree that occupational achievement would be impeded and that he would probably not do well in occupations requiring frequent, protracted or demanding social interaction such as receptionist, restaurant server, cashier or sales clerk.  He should also avoid employment in occupations requiring technical precision, driving, operating machinery or contact with dangerous substances, and that if he were physically able, he would likely do better in vocations that deal mostly with things such as dishwasher, data entry operator, agricultural laborer, or cleaner (tr. 205-208).

Plaintiff was also examined by Samuel Benner, M.D., at the request of the state agency, on May 21, 2004.  His chief complaint related to his motor vehicle accident in 1997 involving pain radiating into his right leg with bilateral leg weakness.  He indicated he had been treated by Dr. Stringer but had not been treated since the spring of 2000.  He had difficulty walking or standing for long periods and used a cane for balance.  On physical examination plaintiff's neck and back had normal range of motion and there was no spasm or other irregularity.  There was no pain or difficulty getting on and off the examination table.  Plaintiff was able to take six or

eight steps without a cane, his ability to squat was minimal and he was able to heel and toe walk normally.  Dr. Banner's diagnosis was chronic low back pain, chronic cervical pain, chronic right elbow pain with decreased range of motion and chest pain by history (tr. 209-212).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to obtain vocational expert testimony, failing to determine his mental residual functional capacity properly, disregarding Dr. Chantomsaeng's opinion, and making an erroneous credibility finding.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.      <u>Vocational Expert.</u>

Plaintiff first contends that the ALJ erred in relying on the medical/vocational guidelines in finding that plaintiff was not disabled, and that he should have sought testimony from a vocational expert.  In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within the plaintiff's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00.  "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983).  However,"where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case …."

**20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a). Thus, each of these findings must be supported by substantial evidence.**

**In the present case the ALJ applied grid rule 202.14, which directs a finding of not disabled for a person who (1) is closely approaching advanced age (50 years of age), (2) has a residual functional capacity for light work, (3) has a high school education, and (4) is either skilled or semiskilled without transferrable skills.**

**The plaintiff argues that the application of the grids was inappropriate due to the lack of evidence demonstrating his ability to perform a full range of light work and because of the non-exertional limitations caused by his mental condition. Central to his argument is his contention that the ALJ adopted the opinion of state agency psychologists that plaintiff was mentally capable of performing only simple, repetitive tasks on a sustained basis.  Plaintiff's argument is misplaced, because the ALJ did not adopt the state agency psychologists' opinions, he only *considered* them (tr. 19).  The ALJ also considered the opinion of Dr. Annis, who felt that plaintiff should avoid occupations involving technical precision, driving and/or operating machinery (tr. 16).  The ALJ also noted that plaintiff's depression was controlled by medication, that plaintiff had never sought mental health counseling and had never been hospitalized fo mental health problems.  The ALJ's ultimate determination was that plaintiff could perform the full range of light, unskilled work (tr. 16, 19). Therefore, he did not limit plaintiff to doing only simple, repetitive tasks as plaintiff contends, and this ground for reversal is without merit.**

**2. <u>Mental Functional Capacity.</u>**

**Plaintiff next contends that the ALJ erred in failing to make a finding on plaintiff's mental residual functional capacity.  This argument is the reverse side of the previous argument, and is equally without merit.  Plaintiff says that the ALJ found that plaintiff had a severe mental condition of dysthymia/adjustment disorder, but that she did not then make a specific finding as to plaintiff's mental residual**

functional capacity.  However, plaintiff again relies on his argument that the ALJ *adopted* the opinions of the state agency psychologists, which is incorrect.  As above, those and other opinions were considered, as were facts relating to plaintiff's failure to seek treatment for mental problems.  By finding that plaintiff could perform the full range of light work, the ALJ clearly found that plaintiff did not have mental restrictions that limited his employability.  Plaintiff is not entitled to reversal on this ground.

> 3.      Dr. Chantomsaeng and plaintiff's subjective complaints of pain.

Next plaintiff contends that the ALJ improperly discounted Dr. Chantomsaeng's opinion, and further erred in discounting plaintiff's subjective complaints of pain.  This contention is without merit.  First, the ALJ found that Dr. Chantomsaeng relied primarily on plaintiff's subjective complaints of pain, and that his own medical records did not show any limitations (tr. 17).  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[1]  *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005).   However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054.  Where he fails to do so, the Eleventh Circuit has stated that it would thus hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's

**credibility, the implication must be obvious to the reviewing court.** ***Dyer v. Barnhart***, **395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.** ***Dyer***, **395 F.3d at 1210 (11ᵗʰ Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.** ***Wilson***, **284 F.3d at 1225-1226;** ***Jones v. Department of Health and Human Services***, **941 F.2d 1529, 1532 (11ᵗʰ Cir. 1991);** ***Hurley***, **385 F.Supp.2d at 1259.**

**Underlying the** ***Hand*** **standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."** ***Scharlow v. Schweiker***, **655 F.2d 645, 649 (5ᵗʰ Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."** ***Hand, supra,*** **at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of**

---

**[2]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.** ***Bonner v. Pritchard***, **661 F.2d 1206, 1207 (11ᵗʰ Cir.1981) (en banc).**

*Case No: 5:07cv10/RS/MD*

other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Dr. Chantomsaeng's opinion that plaintiff had disabling limitations was based on having seen the plaintiff only three times, when he was primarily concerned with plaintiff's black-out spells and his chest pain, neither of which were found to have created any physical limitations. Dr. Chantomsaeng noted plaintiff's complaints, but nothing more.  The findings by Dr. Banner were inconsistent with disability, and it is certainly noteworthy that plaintiff went for more than three years without seeking *any* medical care.  The ALJ considered the entire record, as he was required to do. Substantial record evidence supported his decision, and plaintiff is not entitled to reversal based on his contention that the ALJ erred in discounting Dr. Chantomsaeng's opinion and plaintiff's subjective complaints of pain.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED** and that the clerk be directed to close the file.

At Pensacola, Florida this 30th day of November, 2007.


/s/ *Miles Davis*
   **MILES DAVIS**
   **UNITED STATES MAGISTRATE JUDGE**


*Case No: 5:07cv10/RS/MD*

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:07cv10/RS/MD*